# Mercer County Mutual Fire Insurance Company *versus* Stranahan.

The charter and by-laws of a mutual insurance company, organized under the Act of April 2d 1856 (P. L. 211), contained the following provisions: "The affairs of this corporation shall be managed by a Board of Directors, consisting of twelve members . . . who shall have power to appoint other officers, and employ such agents, clerks and attorneys, as may be found necessary for the transaction of the business of said company; and shall . . make, execute and perfect such and so many bargains, policies and other instruments as shall or may be necessary." "The president shall . . . have full power to examine, adjust and settle in all cases of loss not exceeding one hundred dollars. In all cases exceeding this amount, he may call to his assistance one or more directors as he may think necessary . . . and shall have a general supervision over the affairs of the company." A policy holder having sustained a loss exceeding in amount one hundred dollars, the president and two directors were appointed by the Board of Directors to "adjust" it. The president and one of the directors so appointed agreed with the assured that if he would reduce the amount of his claim, and surrender his policies, the company would release him from all further liability on said policies for assessments. *Held:*

(1) That the Board of Directors had the power under the provisions of the charter and by-laws to delegate the authority to make the said settlement to an adjusting committee.

(2) That the president alone or with the concurrence of any director had full power to make the agreement with the assured.


October 10th 1883. Before Gordon, Trunkey, Sterrett, Green and Clark, JJ. Mercur, C. J., and Paxson, J., absent.

Error to the Court of Common Pleas of *Mercer county:* Of October and November Term 1883, No. 132.

This was an action, originally brought before a justice of the peace, by the Mercer County Mutual Fire Insurance Company against James A. Stranahan to recover the amount of two

assessments for losses and expenses, imposed by said plaintiff upon two policies of insurance held by the defendant. Pleas, nil debet, and the statute of limitations.

On the trial, before McDERMITT, P. J., the defendant contended that by virtue of an agreement made by him with the president of the company plaintiff and one of its directors, prior to the imposition of the assessments, he was released from all future liability upon his policies, which were surrendered for cancellation ; that the consideration of said agreement was the reduction in amount of a loss that was due defendant from plaintiff. The plaintiff denied as matter of fact the existence of such an agreement, and this question of fact was submitted to the jury. The defendant also contended, as matter of law, that the president and director had no power to make such an agreement. The material provisions of the company's charter with respect to the power of the president and directors are as follows :

Sec. IV.   The affairs of this corporation shall be managed by a board of directors consisting of twelve members, to be elected and chosen in accordance with sections four and five of Act of 2nd April 1856, who shall have full power to appoint other officers, and employ such agents, clerks and attorneys, as may be found necessary for the transaction of the business of said company ; and shall determine the rates of insurance, the sum to be insured, and the sum to be deposited for any insurance ; and to make, execute and perfect such and so many bargains, policies and other instruments, as shall or may be necessary.

Sec. III.   The president shall preside at all meetings of the board of directors or company, sign all policies of insurance, give his signature to all orders on the treasurer, and shall have full power to examine, adjust and settle, in all cases of loss not exceeding one hundred dollars.   In all cases exceeding this amount, he may call to his assistance one or more directors, as he may think necessary, and shall call special meetings of the board of directors when necessary, and shall have a general supervision over the affairs of the company.

The minutes of the directors showed that a committee, consisting of the president, the director in question, and one other, was appointed to "adjust the (plaintiff's) loss." The other material facts of the case are fully recited in the opinion of this court.

The plaintiff presented the following point :   That neither Seth Hoagland, president of the plaintiff company, nor the committee appointed to adjust the defendant's loss in 1874, had any authority to make an agreement that either of defendant's policies of insurance should not be assessed for losses and expenses the same as other policies belonging to the same class,

and so far as any defence based upon such an agreement is concerned the plaintiff is entitled to recover.

Answer. Answered negatively as explained in the general charge.

The court charged the jury, inter alia, that " the committee, composed of the president and one or more directors, had the power to make a binding settlement such as the defendant sets up."

Verdict for the defendant and judgment thereon. The plaintiff took this writ of error, assigning for error the refusal of his point and the said instruction of the court.

*Edwin W. Jackson*, for the plaintiff in error.—The power of a president to bind the corporation by a compromise and settlement of claims is not to be implied, it must be conferred in plain and explicit terms. By the provisions of this company's charter, the president could only "examine, adjust and settle" losses, not compromise them by releasing the policy holder from any further liability upon the policies. The fact that he has " a general supervision over the affairs of the company" simply confers upon him authority in matters arising in the line of his ordinary duties. Not only is the power to make such an agreement as was made in this case withheld from the president, but under the provisions of the charter and the decision in Akers v. Hite, 13 Norris 394, that power could only be exercised by the directors collectively. They did not, even if they had the right, delegate this power to the president and the two directors. These were appointed simply to " adjust the loss," not to compromise or release defendant from his liabilities. Our point should have been affirmed: Akers v. Hite, supra; Bangs v. Scidmore, 24 Barb. 29 ; S. C., 21 N. Y. 136 ; Allegheny Workhouse v. Moore, 14 Norris 408 ; Market House Co. v. Jackson, 6 Out. 269.

*Mehard* (*Stranahan* with him), for the defendant in error.— The cancellation of the policy terminated the contract relation between the parties, and defendant therefore ceased to be a member of the company and no assessment could be made upon his policy. The authority of the president to make this adjustment of the loss was not only directly delegated to him by the board of directors but was conferred upon him in explicit language by Art. I. § 3 of the charter.

Mr. Justice CLARK delivered the opinion of the court, January 7th 1884.

This action is brought to recover assessments upon two policies of insurance of the Mercer County Mutual Fire Insur-

ance Company. One of the said policies, No. 86, issued January 13th 1873, covered an insurance to James A. Stranahan, upon certain property therein described, for one year from that date, to the amount of $3,086 ; the other, No. 290, issued 16th January 1874, after the expiration of No. 86, covered an insurance to Stranahan and Hoagland, upon a portion of the same property, for one year from the latter date, to the amount of $1,280.

The company operated under a charter of incorporation, the sixth section of which provides as follows : " Every member of said company shall be bound to pay for all losses or damages, and all necessary expenses accruing in said company, in proportion to the amount he or she may have insured, in the different classes annually, or as often as the directors may make assessments." No premium notes were taken, the assessments being made directly against the policy holders, under this clause of the charter, which was incorporated into each policy, and formed part of the contract.

The affairs of the company were conducted by a board of twelve directors ; no assessments were at any time made, until the 13th April 1880, when in obedience to a writ of mandamus awarded by the court of Common Pleas of Mercer county, the board assessed the policy holders for a sum sufficient to pay the indebtedness of the company. In this general assessment, policies, Nos. 86 and 290 were embraced, the former to the amount of $246.88, and the latter of $48.

On or about the 17th March 1874, after policy No. 86 had expired, and whilst No. 290 was in force, the property insured was wholly or partially destroyed by fire. The company was duly notified of the loss, and on the 13th July 1874, Seth Hoagland, president of the company, J. P. Kerr and another, composed a committee on behalf of the company to adjust the same.

The third section of the first article of the by-laws of the company provides, that the president " shall have full power to examine, adjust and settle in all cases of loss, not exceeding one hundred dollars," and in " all cases exceeding this amount, he may call to his assistance one or more directors, as he may think necessary, and shall call special meetings of the board of directors when necessary, and shall have general supervision over the affairs of the company."

Mr. Stranahan's loss was adjusted under this provision of the by-laws by Mr. Seth Hoagland, president, and Mr. J. P. Kerr, director of the company, at $800, an abatement of $480 having been agreed upon. The defendant alleges that in this adjustment, and by the agreement upon which it was effected, he was released from all future assessments which might otherwise have been made on his policies, Nos. 86 and 290, to cover

[Mercer County Mut. Fire Ins. Co. *v.* Stranahan.]

losses incurred during the period of their continuance, and that the policies were cancelled and surrendered to the company, the release being embodied in a writing thereon indorsed.

We have no doubt, whatever, that an adjustment upon such terms was within the power of the company, and if so, that authority under the fourth section of the charter might be delegated, as it was in this case, to an adjusting committee of the board. The president had " general supervision over the affairs of the company," and alone or with the concurrence. of any member of the board had full power to examine, adjust and settle in all cases of loss. This adjusting committee had as much power to effect a settlement of losses incurred as the board, and that power was derived from the same source ; the action of the committee was not subject to the approval of the board of directors, the committee had " full power."

By the ninth section of the company's charter it is provided that " any member can withdraw from this company at any time, by paying his or her proportion of the losses up to the date of withdrawal, and surrendering his or her policy." This surrender and settlement, it is alleged, was made and the policies properly cancelled and delivered to the president of the company. If this be true, and the jury have so found, the insurance relation was thereby broken, and no further liability remained as against either of the contracting parties. The proportion which the losses incurred bore to the whole amount insured at the time of the loss, gave the ratio of the defendant's liability to the loss, and thus a reasonably approximate estimate could at any time be made.

Whether or not there was in fact an agreement to release the defendant's policies from future assessments, was the specific question for the jury. The release, if given at all, covered both policies, and this defence was to the whole of the plaintiff's claim. Mr. Stranahan's testimony, upon this question was positive, he testified as to an existing fact of which he claimed to have actual knowledge. Mr. Hoagland, in rebuttal, testified as positively, that no such fact existed, and although he testified in negative form, his assertion is positive in effect, that is to say, he testifies positively that no such transaction occurred with him.

There is, however, a difference between the character of the testimony delivered by Hoagland, and that of J. P. Kerr on the precise question before the jury. The court used language a little strong perhaps, in saying that the testimony of Mr. Kerr " amounted to nothing in the shape of contradicting Mr. Stranahan," if this was spoken of the entire testimony of both of these witnesses ; we think, however this language is subject to a qualification which is contained in the charge as a whole.

[Halderman's Appeal.]

The vital question for the jury, as has been stated, was whether or not there was an agreement to release the policies from future assessments. Even if there was, in fact, a difficulty in the adjustment, such as Mr. Kerr referred to, arising out of Clingan's alleged purchase, that was not at all inconsistent with the agreement; for the adjustment and abatement made, might have been in consideration of either, or both of these together. The distinction between positive and negative testimony was carefully stated, and the jury was fully instructed as to the nature and effect of each; it was certainly manifest to the jury that the reference of the court in the expression quoted was alone to the negative portion of Kerr's testimony, and to this only was it applied.

We are not inclined, therefore, to reverse the judgment upon this ground, as we are clearly of opinion, there is no room for the assertion that the charge as a whole was misleading.

As the defence, embraced in this submission to the jury, was to the whole of the plaintiff's claim, the finding of the jury being for the defendant, it is unnecessary for us to consider the question arising under the statute of limitations.

Judgment affirmed.